### THE PEOPLE *v.* JAMES M. FISH.

Receiving on storage for hire, or purchasing, grain by false weights, in the business of a warehouseman and merchant, was a misdemeanor at common law; the offence being now made a felony by statute, the misdemeanor is merged in the felony.

In such a case, an indictment is bad on demurrer, which does not charge defendant's acts and intents to have been *felonious.*

It is also bad where it charges the intent to deceive and defraud "divers citizens of the State," but omits to name them, or to aver that they were to the jurors unknown.

Whether it is necessary that the caption of the indictment should state that "the jurors were sworn, &c., *for the People of the State of New York and* the body of the county of (Erie)," instead of "for the body of the county of (Erie)" merely.—*Quere ?*

Form of demurrer book, on demurrer to indictment.

DEMURRER to indictment. The indictment was found at the Oyer and Terminer, held in and for the county of Erie, in September, 1854, and was sent to the Superior Court of Buffalo for trial.

The indictment was at common law for buying and receiving and storing grain for hire, by false weights, in the exercise of the defendant's business as a warehouseman. The demurrer book containing the indictment and demurrer, with the proper recitals and statements, was as follows:

At a Court of Oyer and Terminer, held at the Court House in the city of Buffalo, in and for the county of Erie, on the eighteenth day of September, in the year of our Lord one thousand eight hundred and fifty-four, by and before the Honorable B. F. Green, one of the justices of the Supreme Court, and Zebulon Ferris and Jesse Lockwood, Esquires, Justices of the Peace, designated as members of the Court of Sessions in and for the said county. Orlando Allen, foreman, and Philip Byron, Henry Longnecker, &c., &c.,

[naming the grand jurors] Jurors of the People of the State of New York, in and for the said county of Erie, then and there duly impanneled, sworn and charged to inquire for the body of the said county, upon their oath present as follows:

*State of New York, County of Erie, ss:*

The jurors of the People of the State of New York and for the body of the county of Erie aforesaid, upon their oath, present: That James M. Fish, on the first day of March, in the year 1854, and from thence until the taking of this inquisition, did use and exercise, at the city of Buffalo, in the county of Erie aforesaid, the trade and business of a warehouseman, and also the trade and business of receiving, storing and weighing cargoes of grain of all kinds, to wit: corn, wheat, barley and oats, from vessels, schooners, brigs, sloops, steamboats and propellers in the Buffalo creek in said city being, in his said warehouse for the purpose of storage, transhipment and purchase, and on the days and times, and at the place aforesaid, did use and exercise the trade of weighing such aforesaid cargoes of grain for the owners, consignees and carriers thereof, for certain large sums of money paid by the said owners thereof to the said James M. Fish, and did, during said times and at said place, weigh, store, receive and purchase one thousand bushels of corn, one hundred bushels of barley, one hundred thousand bushels of wheat, one hundred thousand bushels of oats; and that the said James M. Fish, contriving and fraudulently intending to cheat and defraud the People of said State, whilst he used and exercised his said trade and trades, business and businesses, to wit: on the first day of April, 1854, and on divers other days and times between that day and the taking of this inquisition, at the city aforesaid, did, knowingly, falsely and fraudulently, keep in a certain warehouse and elevator there, wherein he, the said James M. Fish, did so as aforesaid carry on his trade and trades, business and businesses, certain false weights for the weighing of aforesaid cargoes of said different kinds of grain by him as aforesaid received, stored, pur-

chased and weighed, which said weights were then and there, by artful and deceitful contrivances, so made and constituted as to cause every quantity of said different kinds of grain received in said warehouse and elevator, and weighed by said false weights, thereby to appear of less weight than the real and true weight, by one-twentieth part of such true weight; and that the said James M. Fish, well knowing the said weights to be false, as aforesaid, did then and there, to wit: on the several days and times aforesaid, at the city and in the county aforesaid, willfully, falsely and fraudulently, into his said warehouse and elevator, and with the aforesaid false weights, divers quantities of aforesaid different kinds of grain transferred from aforesaid vessels, schooners, brigs, steamboats and propellers, into his said warehouse and elevator, in the way of his aforesaid trade and trades, business and businesses, weigh, receive, store and purchase, to wit: one hundred thousand bushels of corn, one hundred thousand bushels of barley, one hundred thousand bushels of wheat, one hundred thousand bushels of oats, and which last aforesaid corn, wheat, barley and oats, by reason of their being weighed by said false weights, were then and there very much deficient of their true and just weight, to the great damage and deceit of the People of said State, to the evil example of all others in like cases offending, and against the peace of the People of the State of New York and their dignity.

ALBERT SAWIN, *District Attorney.*

Indorsed "a true bill."

ORLANDO ALLEN, *Foreman.*

Which bill being presented to the said Court of Oyer and Terminer by the said jurors, it was on the twenty —— day of September aforesaid, prayed by the said Albert Sawin, district attorney, as aforesaid, that the said bill might be filed in the said court before the said justices; and it was ordered by the said court that said bill should be filed in said court, and it was done accordingly.

And thereupon, it was prayed by the said Albert Sawin, on behalf of said People, that the said bill might be sent to the Superior Court of Buffalo for determination, and it was done accordingly.

And hereupon, the said James M. Fish appears in his own proper person, in the said Superior Court of Buffalo, before the justices thereof, on the second day of October, 1854, and the said Albert Sawin, who prosecutes for said People, also comes and brings into the said court the said bill; and the said James M. Fish prays that the same may be read to him; and it is read to him; and thereupon the said court orders that said bill be filed in said Superior Court, and it is done accordingly.

And the said James M. Fish is thereupon ordered by said court to answer said bill, and he answers the same accordingly, and says that there is no such court as the Superior Court of Buffalo, which, by the laws of this State, can or ought to take cognizance of the said bill and the matters therein alleged.

And he also says, that if the said court can or ought to take cognizance of the said bill and the matters therein alleged, then, he says, that said indictment and the matters therein contained, in manner and form as the same are above stated and set forth, are not sufficient in law, and that he, the said James M. Fish, is not bound by the law of the land to answer the same, and this he is ready to verify.

Wherefore, for want of sufficient authority in this behalf, and for want of a sufficient indictment in this behalf, the said James Fish prays judgment, and that the court here may not take cognizance of said bill, and that he may be dismissed and discharged by said court, from the said premises in said indictment specified.

And hereupon, the said Albert Sawin, who prosecutes for the said People in this behalf, says that this court has the power and the authority by law, and ought to take cognizance of the said bill and the matters therein alleged.

And he also says that the said indictment, and the matters therein alleged, in manner and form as the same are above stated, are sufficient in law to compel the said James M. Fish

to answer the same; and this the said Albert Sawin, who prosecutes as aforesaid, is ready to verify and prove the same, as the court shall direct and award. Wherefore, inasmuch as the said James M. Fish hath not answered to the said indictment, nor hitherto in any manner denied the same, the said Albert Sawin, for the said People, prays judgment, and that the said James M. Fish may be convicted of the premises in the said indictment specfied; but because, &c.

*D. Tillinghast,* for the defendant.

1. The court has no jurisdiction of this case.

2. The grand jury was never sworn to inquire for the People of the State of New York. This is a defect.

3. The indictment is defective in not disclosing the means by which the alleged cheat was effected.

It is not enough to say that it was done by false weights, and that those weights were artfully and deceitfully contrived.

The facts of the act and deceit should be alleged. (1 *Chitty Crim. Law, ed.* 1836, 226; 9 *Cowen Rep.*, 586; 5 *Term Rep.*, 624.)

4. In relation to the act and deceit, no *scienter* is alleged.

5. It is defective because it does not give the name of any individual who was defrauded.

6. It does not show how the fraud was committed, nor allege that their names were to the jurors unknown.

7. It does not state in what particular character defendant got possession of the grain, whether as bailee or purchaser. It is defective for that reason.

8. If any person is charged with being defrauded, it is the defendant.

9. It is alleged that defendant intended to cheat the people, but it does not tell how it was to be done or intended to be done.

If the indictment is uncertain as to whether defendant was bailee or purchaser, then it is bad for uncertainty. (2 *Burr.*, 1127.)

*Albert Sawin* (District Attorney), for the People.

The People *v.* Fish.

*By the Court,* CLINTON, J.   The defendant denies that "there is any such court as the Superior Court of Buffalo, which, by the laws of this State, can or ought to take cognizance of" this indictment.   The court is organized under an act of the Legislature, and the counsel cannot expect us to deny our right to exercise the powers we are daily exercising.   The precise point of the objection is not explained, and it can hardly be considered as addressed to us.

It is claimed that the indictment is not warranted by the common law.   The facts that no instance of such a prosecution is on record, and that no assertion that the acts averred are a common law offence is to be found in any treatise or book of law, are undoubtedly well calculated to produce doubt, but they are not conclusive.   The common law lays down general as well as particular definitions of crime—it defines classes of crime, as well as instances of the class, the species as well as the variety—and whatever act, or series of acts, comes within the general definition, or class, or species, must constitute a particular offence.   The better general definition of indictable cheats and frauds at common law, is "the fraudulent obtaining the property of another by any deceitful and illegal practice or token (short of felony), which affects or may affect the public." Selling by false weights or measures, comes within the definition.   The fraudulent weight or measure, is a false and deceitful token, which may injuriously affect the public, and the practice of selling by it does so affect it.   Buying, or receiving and storing for hire, by false weights or measures, in a recognized and most important department of commercial business, is plainly within the spirit of the definition, and these practices are equally if not more injurious to the public than the selling or retailing of property by such false token.   It may be true, that when the first indictment for selling by false weights was sustained, the mischief of buying or receiving by them was not felt by the public; but from the growth of commerce, either must now be, if a practice, one of a most alarming nature, well worthy of the most decided reprehension

of the law. I am opinion that an indictment will lie for this offence.

If, however, this misdemeanor at common law is now a statutory felony, the misdemeanor is merged. False weights are false tokens. They were held to be so long before the statute of cheats. The revision of 1813 (1 *R. L.*, 410, § 1), provided for cheats by false pretences only; but the Revised Statutes broadened the definition so as to include the common law offences, and declared them all felonies. Those statutes now provide that " every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretence," " obtain from any person any money, personal property, or valuable thing," shall be guilty of a felony. This statute increases the number of indictable cheats, and makes them felonies. I do not see how any cheat can now be regarded as a mere misdemeanor; and the indictment is for felony.

It is bad, because it does not charge the acts and intents of the prisoner to have been felonious.

It sufficiently describes the instruments of the cheat and the manner of cheating thereby.

But an indictment must, as an almost universal rule, give the accused notice of all the particulars of the crime charged, which may aid him in preparing for his defence, or show a valid excuse. Hence, when a fraud is charged, the person defrauded must be named, or, in excuse, the grand jury must aver that he is to them unknown. In this indictment it would have been sufficient to charge only one receipt by false weights, in fraud of a single person named. So it has been held sufficient to charge sales to divers persons to the jury unknown. Here the charge is of receipts from divers persons, and they are not, nor is any one of them named, nor are they averred to have been to the jurors unknown.

The caption of the indictment is probably sufficient, but I am not clear that it is so. The indictment was found in and comes to us from another court, and the caption is therefore, I think, a part of it. If it be necessary to the due organization

'of the grand jury that the jurors be sworn to inquire "as well for the People of the State of New York as for the body of the county of Erie," and they were sworn only "to inquire for the body of the county of Erie," there would seem to be a strong indication of a substantial irregularity which has not been waived by pleading, and it may follow that the defect is not one of those defects which our statute requires us to disre-gard, as " a defect or imperfection in matters of form, which does not tend to the prejudice of the defendant;" and the public prosecutor must excuse us for suggesting that the safer course is to adhere to the immemorial form of the caption.

Judgment for defendant.